**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| CANDY CRAFT CREATIONS, LLC, | |
| Plaintiff, | CIVIL ACTION NO.: 2:12-cv-91 |
| v. | |
| GREG GARTNER; GARTNER STUDIOS, INC.; and TYLINA FOOD PRODUCTS CORPORATION, | |
| Defendant. | |

**O R D E R**

This matter came before the Court on October 8, 2015, for a hearing on the parties' Motions in Limine.[1] For the reasons set forth at the hearing and supplemented below, the Court acts on the parties' Motions as follows:

- The Court **DENIES** Defendants' Motion in Limine No. 1: Motion to Preclude Evidence of Thomas Kwak's Actual or Apparent Authority by Defendants, (doc. 386);

- The Court **DENIES** Defendants' Motion in Limine No. 2: Motion to Preclude Any Mention of or Reference to Plaintiff's Create-a-Pack Theory of Recovery, (doc. 387);

- The Court **DENIES AS MOOT** Defendants' Motion in Limine No. 3: Motion to Preclude Plaintiff from Stating that Reverse Engineering of a Trade Secret, Absent any Qualifications, is Unlawful, (doc. 388);

- The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion in Limine No. 4: Motion to Exclude Testimony or Oral Argument that Defendants'

---

[1] At that hearing, the Court also heard from the parties on their respective objections to trial exhibits. (Docs. 404, 405.) The Court will issue a separate Order on those objections.

Withheld Incriminating Evidence and to Exclude Evidence that Sanctions Against Defendants Arising out of Discovery Issues are Pending, (doc. 389);

- The Court **DENIES** Defendants' Motion in Limine No. 5: Motion to Exclude Evidence, Testimony, and Oral Argument of Damages Calculated on Plaintiff's Mechanized Process and Recipe, (doc. 390);

- The Court **GRANTS AS UNOPPOSED** Defendants' Motion in Limine No. 6: Motion to Prohibit Plaintiff's Expert J.P. Gingras from Offering Testimony During Phase One of Trial that is in Support of Opinion No. 5 in his Expert Report or any Testimony Describing Defendants' Ability to Pay Money Damages (doc. 391); and

- The Court **GRANTS AS UNOPPOSED** Plaintiff's Motion in Limine as to Defendant's Claim for Attorneys' Fees Pursuant to O.C.G.A. § 13-6-11, (doc. 416).

## BACKGROUND

The background and facts of this case are laid out in detail in the Court's prior Orders, in particular the Court's March 31, 2015, Order on Defendants' dispositive Motions, (doc. 371),[2] and need not be laid out herein in detail. Succinctly, this case centers on Plaintiff's fondant cake decorating product, "Fondarific." Plaintiff and Defendants discussed, but never reached, an exclusive supply distribution agreement whereby Plaintiff would supply and Defendants would market Fondarific on a national level. However, during the negotiation process, the parties entered a non-disclosure agreement and operated under open purchase orders. Ultimately, Defendants developed their own fondant product, "Fontastic", which garnered the same endorsement deals and distribution agreements which Plaintiff hoped Fondarific would garner. Plaintiff brought this action alleging, among other things, that, in developing Fontastic,

---

[2] This Order is hereinafter referred to as the "Omnibus Order".

Defendants defrauded Plaintiff, misappropriated Plaintiff's trade secrets, and breached the parties' nondisclosure agreement. Defendants deny all of these allegations and claims. This case is set for trial on December 8, 2015.

**DISCUSSION**

## I. Defendants' Motion in Limine No. 1 to Preclude Evidence of Thomas Kwak's Actual or Apparent Authority by Defendants' Subsequent Acts (Doc. 386)

Plaintiff's allegations that Defendants breached the nondisclosure agreement focuses in large part on Gartner Studios' employee Thomas Kwak's visit to Plaintiff's facility on March 18, 2010. Prior to Kwak's visit, on December 3, 2009, Defendant Greg Gartner signed a "Non-Disclosure and Confidentiality Agreement" ("the NDA") on behalf of Defendant Gartner Studios. (See Doc. 45-2, pp. 32–35.) Defendants argue that the NDA required Plaintiff to put in writing any claim of confidentiality. Plaintiff counters that, even if the writing requirement was applicable, Kwak waived that requirement during his March 2010 visit by agreeing that everything he saw during that visit was confidential. Defendants argue that Kwak did not have the authority to alter or modify the NDA or waive the writing requirement. In the Omnibus Order, the Court concluded "there is at least a question of material fact" on that issue, and, therefore, the jury will make this determination." (Doc. 371, p. 46.)

Defendants' first Motion in Limine focuses on what evidence the jury should consider to make that determination. Defendants maintain that the Court should bar Plaintiff from offering any evidence of Defendants' acts subsequent to Kwak's March 18, 2010, visit when assessing Kwak's actual or apparent authority to waive or modify the NDA. (Doc. 386, p. 1.) In support of this position, Defendants cite to not only the Federal Rules of Evidence on relevancy, but also Georgia law regarding principals and agents.

For the reasons the Court stated at the Motions in Limine hearing, Defendants argue for far too strict of a limitation on the evidence relevant to Kwak's actual or apparent agency.  As an initial matter, the evidence that Defendants are seeking to exclude will likely be introduced on other issues.  Moreover, Defendants' subsequent conduct can be relevant to the scope of Kwak's actual authority on the date of his visit.  As the Georgia Court of Appeals has explained, "[t]he fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties."  Arrington & Blount Ford, Inc. v. Jinks, 270 S.E.2d 27, 29 (Ga. Ct. App. 1980) (noting, "as uncontroverted proof of [salesman's] agency", among other things, salesman drove cars with dealership's "paper tags both before and after the transaction took place.") (emphasis supplied).  For instance, evidence that Defendants permitted Kwak to enter contracts on their behalf around the time that he visited Plaintiff's facility makes it more likely that modification of the NDA was within the scope of his agency. [3]

Furthermore, Defendants' actions subsequent to Kwak's visit could help the jury assess the issue of Kwak's apparent agency and Plaintiff's reliance thereon.  See Capital Color Printing, Inc. v. Ahern, 661 S.E.2d 578, 585 (Ga. Ct. App. 2008) ("The doctrine of apparent agency . . . is determined by examining both the conduct of the alleged principal and the detrimental reliance on that conduct by the third party asserting the doctrine.  The acts of the agent which create apparent authority may include written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.") (internal quotations and

---

[3]  In their Motion, Defendants specifically argued that Plaintiff should be precluded from offering evidence that Kwak was promoted to vice-president of Gartner Studios after the visit to Plaintiff's facility. (Doc. 386, pp. 3, 5.)  However, at the hearing on Defendants' Motion, Defendants could not state when Kwak was promoted to this position.  Moreover, Defendants did not offer any evidence regarding how Kwak's duties or the scope of his agency changed with his new job title.  Further, Defendants' Motion casts a far broader net than merely evidence of Kwak's promotion and seeks to exclude any evidence of Defendants' acts subsequent to Kwak's visit.

alterations omitted).  Plaintiff could also seek to offer acts subsequent to Kwak's visit to demonstrate that Defendants did not revoke Kwak's agency.  <u>Arrington</u>, 270 S.E.2d at 29 ("Whenever a general agency has been established for any purpose, all persons who have dealt with the agent have a right to assume that his authority to deal with them in behalf of his principal continues, until notice, express or implied, has been conveyed to them that the agency has been revoked. . . . Authority to an agent to do a thing generally includes authority to do everything usual and necessary for the accomplishment of the main object.") (internal quotations and citations omitted).  Lastly, the jury would have to consider evidence subsequent to Kwak's visit to determine whether Defendants ratified any waiver or modification of the NDA during his visit.

For all of these reasons and for those stated at the hearing, the Court **DENIES** Defendants' Motion in Limine No. 1.  (Doc. 386.)

## II.   Defendants' Motion in Limine No. 2 to Preclude any Mention of or Reference to Plaintiff's Create-a-Pack Theory of Recovery (Doc. 387)

Matt Engstrum is a former employee of Defendant Gartner Studios.[4]   According to Plaintiff, Engstrum was heavily involved in Defendants' development of Fontastic.  For example, Plaintiff points out that on August 30, 2010, Engstrum e-mailed Kwak and asked, "I have a question in regards to your trip to Fondarific.  Do you know or think that they [Plaintiff's representatives] are currently heating up the compound base of (white chocolate) in chip form or could they be using a liquid white chocolate?".  (Doc. 384-2, p. 7.)  Mr. Kwak responded, "They are using chips and heating them in the microwave.  It is actually white chocolate compound." <u>Id.</u>

---

[4]  There appears to be some discrepancy as to whether Engstrum also worked for Defendant Tylina Foods Products.  (Doc. 399, p. 2.)

In April 2014, Engstrum apparently left Gartner Studios and began to work at Create-a-Pack, a competitor of Plaintiff that also makes and markets fondant.  In the proposed Pretrial Order, filed on July 24, 2015, Plaintiff indicated that it intended to introduce evidence of Engstrum's employment with Create-a-Pack and that company's sales of fondant.  (Doc. 384, pp. 19, 27.)  In their second Motion in Limine, Defendants seek to exclude any "any evidence related to [Plaintiff's] contention that non-party Create-a-Pack Foods, Inc.[,] . . . has also misappropriated Plaintiff's trade secrets or other confidential information, and that the jury should hold Defendants, or any of them, liable for that alleged misappropriation[ ]" in the above-styled action.  (Doc. 387, p. 1.)  Defendants offer two arguments for exclusion of such evidence: 1) that Plaintiff did not disclose its intention to offer evidence regarding Engstrum's employment with Create-a-Pack until the night before the pretrial order was due; and 2) that evidence of Engstrum's employment with Create-a-Pack is irrelevant and unduly prejudicial.

The Court recognizes that one of the primary purposes of discovery is to avoid undue "surprises" at trial.  See King v. City of Waycross, No. CV 5:14-CV-32, 2015 WL 5468646, at *3 (S.D. Ga. Sept. 17, 2015) ("A major purpose of discovery is eliminating surprise."). However, in this case, the belated discovery and disclosure of Engstrum's employment with Create-a-Pack does not warrant the encompassing relief that Defendants seek.  Plaintiff could not have disclosed Engstrum's employment with Create-a-Pack during discovery, as this employment did not begin until well after the discovery deadline of February 17, 2014. (See Doc. 210.)  As other courts have held, events that occurred after discovery should not be excluded from trial merely because they were not disclosed during discovery.  See, e.g., Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp.2d 901, 943 (S.D.N.Y. 2013) ("Because the evidence relates to events that occurred after the close of discovery and is potentially probative as to the

6

determination whether [the defendants] were plaintiffs' employers, the Court grants the motion [to supplement the record with new evidence]."); Phillips v. Irvin, No. CIV.A. 05-0131-WS-M, 2007 WL 2156412, at *6 (S.D. Ala. July 25, 2007) (denying motion to exclude evidence of plaintiff's post-discovery sale of business on issue of lost wages).

Furthermore, according to Plaintiff's counsel, it did not learn of Engstrum's change of employment until months after the transition. In contrast, because Engstrum was an employee of Defendants, they presumably knew about his employment with Create-a-Pack much sooner. Consequently, Engstrum's new employment is not a surprise to Defendants. Additionally, Plaintiff does not seek to offer any documentary or opinion evidence regarding Engstrum's employment with Create-a-Pack. Rather, it proposes to ask questions of Engstrum and other already-identified witnesses regarding his employment with Create-a-Pack. Defendants have equal, if not superior, access to these witnesses. Thus, it does not appear that Plaintiff is seeking to offer any evidence that is in Plaintiff's custody or control that has not been disclosed to Defendants.[5]

Lastly, Defendants could have cured any surprise through measures short of the drastic remedy of excluding this evidence. Phillips, No. CIV.A. 05-0131-WS-M, 2007 WL 2156412, at *6 ("Moreover, rather than seeking the draconian remedy of excluding this evidence altogether, defendant could have requested limited supplemental discovery of [plaintiff] relating specifically to the sale of his business. Given the narrowness of the issue and the fact that the sale occurred after discovery closed, this could have represented a viable way of vindicating defendant's interest in discovery in an efficient and inexpensive manner. That defendant chose not to go that route does not constitute unfair prejudice justifying the exclusion of plaintiff's evidence."); see

---

[5] Further, Defendants have not identified any discovery request pertinent to this issue that Plaintiff has failed to supplement.

also Thornton v. United States, No. CV 111-106, 2013 WL 443666, at *8 (S.D. Ga. Feb. 5, 2013) ("Instead of attempting to resolve the Rule 26 dispute during discovery and cure any surprise or harm it felt it had suffered, Defendant moved for summary judgment—effectively seeking the harshest sanction available."). Defendants were aware of Plaintiff's intention to offer evidence regarding Engstrum's employment with Create-a-Pack more than four months before the start of trial when the pretrial order was filed on July 24, 2015. Accordingly, Defendants had sufficient time to cure any undue surprise as to this issue.

Defendants also argue that Engstrum's employment with Create-a-Pack is irrelevant and unduly prejudicial. They argue that Create-a-Pack was advertising confection processing services for fondant on its website prior to Engstrum's employment. Thus, Defendants argue, "Create-a-Pack developed and sold its processing services for fondant before Matt Engstrum ever arrived there." (Doc. 387, p. 5.) Plaintiff counters that, though it does not know whether Engstrum took Candy Craft's trade secrets to Create-a-Pack, its attorneys should be allowed to inquire into such evidence at trial. (Doc. 399.) Plaintiff contends that Gartner Studios' sales from fondant have decreased since Engstrum went to work for Create-a-Pack, and Plaintiff should be allowed to explore "whether Defendants have entered into a business relationship with Create-a-Pack to disguise sales in an effort to minimize damages in this case." (Id. at p. 3.)

The Court rejects Defendants' argument that this evidence is irrelevant because Create-a-Pack was in the fondant industry before Matt Engstrum worked there. (Doc. 387, p. 4.) The limited evidence before the Court, four sentences of marketing from Create-a-Pack's website regarding "Confection Processing", is not sufficient for the Court to gauge the status of Create-a-Pack's fondant business. (See Doc. 387-1.) Moreover, even if Create-a-Pack had already developed processing services for fondant prior to Engstrum's employment, that does not

8

foreclose the possibility that Create-a-Pack used Plaintiff's trade secrets to improve those services or to modify its business model. Indeed, to find otherwise would be to essentially conclude that a competitor could not misappropriate a trade secret as long as they were involved in the industry prior to the misappropriation.

For these reasons, the Court rejects Defendants' stated objections to evidence of Engstrum's employment with Create-a-Pack and **DENIES** their Motion in Limine No. 2. (Doc. 387.) However, this ruling should not be construed as a determination on whether any misappropriation by Create-a-Pack is attributable to Defendants. The evidence and arguments before the Court are insufficient for such a determination. However, Plaintiff has made a sufficient showing of relevance (for example, that Create-a-Pack's use of Plaintiff's trade secrets could potentially be tied to Defendants or that such use could be relevant to the value of Plaintiff's trade secrets) to allow it to inquire into Engstrum's employment with Create-a-Pack and whether Create-a-Pack used Plaintiff's trade secrets. The Court emphasizes that this inquiry should not be protracted. As noted above, Plaintiff has not indicated that it has any additional documentary evidence or opinion testimony on this issue. Consequently, the presentation on this issue will be limited to the questioning of witnesses who have already been identified.[6]

### III. Defendants' Motion in Limine No. 3 to Preclude Plaintiff from Stating that Reverse Engineering of a Trade Secret, Absent any Qualifications, is Unlawful (Doc. 388)

Plaintiff agreed at the Motions in Limine hearing that it had no intention of arguing that reverse engineering of a trade secret, absent any qualifications, is unlawful. Accordingly, Defendants' Motion in Limine No. 3, (doc. 388), is **DENIED AS MOOT.**

---

[6] Should any party seek to introduce any other evidence regarding Mr. Engstrum's employment with Create-a-Pack, it must obtain leave of Court to do so well in advance of trial. Furthermore, it must provide good cause for the introduction of such evidence and, if such evidence has not already been disclosed, it must be prepared to explain why.

IV.   **Defendants' Motion in Limine No. 4 to Exclude Testimony or Oral Argument that Defendants Withheld Incriminating Evidence and to Exclude Evidence that Sanctions Against Defendants Arising out of Discovery Issues are Pending (Doc. 399)**

Defendants' lackluster and evasive discovery efforts plagued the early litigation of this case.  The Court has previously found clear and convincing evidence that Defendants employed abusive behavior during the discovery process and, therefore, that sanctions are warranted. Through their Motion in Limine Number 4, Defendants seek to exclude evidence of that ruling as well as Defendants' conduct underlying it.  For the reasons and in the manner set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

A.   **Background of the Court's Ruling on Plaintiff's Motion for Sanctions**

Defendants' misconduct during discovery is well-documented through numerous pleadings in this case and need only be summarized herein.  Plaintiff brought several motions to remedy Defendants' discovery deficiencies.  See, e.g., doc. 100 (Motion to Strike Answer and for Sanctions); doc. 109 (Motion to Compel and for Sanctions); doc. 118 (Motion to Strike Declaration).  The Court first held a hearing on these motions on July 17, 2013 and, then, due to the "fairly stunning behavior" of Defendants, held an evidentiary hearing on December 3, 2014. (Doc. 213, p. 5.)

At the evidentiary hearing, the Court heard approximately six and a half hours of testimony regarding Defendants' discovery failures.  (Doc. 213.)  That testimony came from Defendants' officers and employees, as well as their former counsel.  Id.  Generally, the evidence submitted at that hearing revealed that Defendants' discovery conduct had been abusive in several areas including: 1) incomplete initial Rule 26 disclosures; 2) woefully inadequate initial responses to Plaintiffs' Requests for Production of Documents and deposition subpoenas; 3) evasive and contradictory (at the least) answers at depositions; 4) and troublesome sworn

declarations.  On February 6, 2014, after additional briefing by both sides, the Court issued an

Order granting Plaintiff's Motion for Sanctions.  (Doc. 223.)  The Court found that Defendants

failed to "participate in discovery in a forthcoming and timely manner" and that their discovery

efforts "show disdain for opposing counsel, opposing parties, and for the Court's function, rules,

and processes."  (Id. at p. 15.)  However, the Court declined to employ the drastic remedy of

striking Defendants' Answer and instead ruled that monetary sanctions were a sufficient remedy

for Defendants' misconduct.  Id.[7]  The Court will determine the amount of monetary sanctions

following the trial of this case.

      **B.**      **Discussion of Defendants' Motion in Limine No. 4**

      Through their Motion in Limine Number 4, Defendants argue that "permitting Plaintiff to

admit evidence of the prior, yet remedied, discovery issues and pending sanctions[ ] would be

entirely outweighed by the prejudicial effect such information would have on the jury."

(Doc. 389, p. 1.)  In response, Plaintiff argues that Defendants' discovery misconduct,

particularly their concealment of "incriminating" e-mails, is pertinent to several issues including

their claim for attorneys' fees and punitive damages.  (Doc. 401.)  Plaintiff also argues that this

evidence demonstrates Defendants' state of mind, which Plaintiff must prove to recover under

the Georgia Trade Secrets Action ("GTSA") and on its claim of fraud.  Id.

        1.      Evidence of the Court's Ruling on Plaintiff's Motion for Sanctions

      As an initial matter, Plaintiff will not be permitted to introduce evidence of the Court's

Order granting its Motion for Sanctions.  It appears that Plaintiff agrees the Court's ruling itself

will not be admitted because Plaintiff's Response does not specifically argue that the Court's

decision would be probative on any issue.  (See Doc. 401.)  Furthermore, any probative value of

---

[7]  The Court declined to strike the answer, in large part, due to the "scrupulous efforts of Defendants' new
counsel in attempting to remedy discovery deficiencies."  Id.

the Court's ruling would be substantially outweighed by its propensity to cause Defendants unfair prejudice and to mislead the jury.  Fed. R. Evid. 403.  Given the inherent respect jurors afford judges, the jury would undoubtedly give undue weight to the Court's ruling against Defendants.  If the jurors were to hear that the Court had found Defendants are subject to sanctions, they would like be biased against Defendants.  As a result, it would then be difficult for jurors to take an objective view of Defendants, their evidence, and their witnesses.  This would inhibit the jury's truth-seeking function.  Moreover, such bias is beyond the relief the Court contemplated in issuing its Order granting Plaintiff's Motion for Sanctions.  As the Court made clear, monetary sanctions will suffice to remedy Defendants' discovery misconduct. (Doc. 223, p. 15.)  Furthermore, as discussed in more detail below, in finding sanctions warranted, the Court cited not only Defendants' conduct, but also the conduct of their former counsel.  However, if the ruling were introduced, the jury would likely be left with the misimpression that Defendants were solely responsible for the imposition of sanctions.  For all of these reasons, Defendants' Motion in Limine is **GRANTED** to the extent it seeks to exclude evidence of the Court's ruling granting Plaintiff's Motion for Sanctions.

2.      Defendants' Prior Statements

In contrast, Defendants' Motion is **DENIED** to the extent it seeks to exclude prior statements of Defendants' principals, employees, and witnesses.  As noted above, the Court cited Defendants' Rule 30(b)(6) depositions and their representatives' declarations in its February 6, 2014, Order.   Plaintiff characterizes Defendants' statements and declarations as not merely misleading but perjurious.  Defendants' principals and employees have written communications during this litigation that Plaintiff contends bear upon the substance of its claims.  Merely because these communications were part of the discovery dispute in this case does not cause

them to be inadmissible.[8]   Accordingly, evidence of Defendants' prior statements will not be excluded by Defendants' Motion in Limine No. 4 and will be subject to the same rules of admissibility as in any other case.  See, e.g., Fed. R. Evid. 613, 801(d)(1), & 801(d)(2).

    3.    Defendants' Failure to Produce Documents

    The litigation regarding Defendants' discovery misconduct has primarily focused on their failure to produce documents.  The unfortunate history of Defendants' document production was explored at length during the December 3, 2013, hearing and detailed in the Court's February 6, 2014, Order.  (Doc. 223, pp. 2–7.)  Defendants' original attorney, John M. Weyrauch, conducted the initial document production which resulted in Defendants producing 1,307 documents on September 21, 2012.  (Doc. 213-1, p. 42.)  In approximately October 2012, after concerns arose regarding the extent of production, Russell Slygh, Defendants' Information Technology Director, conducted a keyword search of Defendants' representatives' e-mails which produced over 10,000 documents.  (Doc. 213-3, p. 18.)  Slygh testified that he turned all of these documents over to Weyrauch and that he also sent copies of the respective e-mail searches to Defendant Gartner and the other employees whose e-mail was searched.  (Doc. 213-5, pp. 24–25, 33–34.)  However, after reviewing these documents, Weyrauch did not produce any of the documents to Plaintiff's counsel because he believed the documents were either not pertinent or duplicative of the documents that were already provided.  (Doc. 213-3, pp. 12, 20–21.)

    In March 2013, Kaufman, Miller & Forman, PC, ("the Kaufman firm"), replaced Weyrauch as lead defense counsel.  Thereafter, the Kaufman firm performed an extensive search of Defendants' computer systems.  The Court held a hearing on discovery issues on July 17, 2013, and ordered Defendants to produce all relevant documents.  (Doc. 164.)  On October 15,

---

[8]  At the Motions in Limine hearing, Defendants' counsel seemed to agree that, if otherwise admissible, any witness' prior statements should not be excluded by Defendants' Motion in Limine No. 4.

2013, the Kaufman firm produced over 60,000 pages of highly pertinent documents to Plaintiff that Defendants had never before produced.  (Doc. 190, p. 2.)  These never-before-produced documents included several e-mails that Plaintiff refers to as "smoking gun" type documents. (See Doc. 190, pp. 6–10.)

Plaintiff has indicated that it seeks to introduce Defendants' withholding of this evidence in the trial of this case.  Indeed, in its brief statement of the case contained in the pretrial order, which the parties are cautioned that the Court will use to instruct the jury, Plaintiff includes the following: "Gartner Studios concealed incriminating emails and evidence of its conduct in this Litigation."  (Doc. 384, p. 6.)  Through its brief in Response to the instant Motion and at the hearing, Plaintiff has laid out three grounds which it contends Defendants' concealment of evidence is pertinent: 1) to show Defendants' state of mind; 2) to support Plaintiff's claim for attorneys' fees under O.C.G.A. § 13-6-11; and 3) to support Plaintiff's claim for exemplary damages under the GTSA and punitive damages under O.C.G.A. § 51-12-5.1.  For the reasons set forth below, these grounds do not provide a basis for introduction of this evidence; therefore, Defendants' Motion in Limine No. 4 is **GRANTED** to the extent it seeks to exclude evidence of Defendants' withholding of e-mails and other documents during discovery.

> a.  Whether Plaintiff can offer Defendants' withholding of documents during discovery to prove Defendants' state of mind.

In order to prove its claims of trademark infringement, Plaintiff must demonstrate: "(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "(B) disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of a trade secret."  O.C.G.A. § 10-1-761(2).  In addition, Plaintiff's claims of fraud, attorneys' fees, and punitive damages involve elements pertaining to Defendants' state of mind

in their dealings with Plaintiff. Plaintiff argues that Defendants' withholding of documents during this litigation is probative of their state of mind before the litigation. Succinctly, Plaintiff argues that "Defendants hid incriminating evidence because they knew they used improper means to misappropriate Plaintiff's trade secrets." (Doc. 401, p. 4.)

Plaintiff has not cited any cases in which a court has found that a party's discovery misconduct during litigation could be used as evidence of that party's state of mind prior to the litigation. Nonetheless, Defendants' misconduct during the litigation could be somewhat probative of their intent in dealing with Plaintiff. The jury could infer Defendants withheld documents because they knew that they obtained Plaintiff's trade secrets improperly and dealt with Plaintiff in bad faith. However, the withholding of documents would only be minimally probative of Defendants' knowledge and intent. There could be a number of reasons that Defendants withheld documents other than a guilty mind. Moreover, as Defendants' new counsel has repeatedly stressed, the withholding of documents is at least partially attributable to Defendants' former counsel, Weyrauch. Thus, Defendants argue, the withholding of documents is not probative of their intent. Rather, Defendants maintain, this withholding illuminates the failings of their past counsel. (See Doc. 201.) Plaintiff disputes this attribution to Weyrauch and cites to an e-mail whereby Defendant Greg Gartner directed Slygh to show Gartner any e-mails before Slygh released them. (See Doc. 213, pp. 7–10.) However, the evidence was undisputed that Slygh gave Weyrauch over 10,000 pages of documents which Weyrauch then failed to produce. Consequently, any probative value that the withholding of documents may have as to Defendants' state of mind is at least diluted by the involvement of their past counsel. For these reasons, the withholding of documents is only minimally probative of Defendants' prelitigation state of mind.

In contrast, this evidence has a significant danger of causing unfair prejudice and confusion of the issues, as well as misleading the jury, unduly delaying the trial of this case, and wasting time.  See Fed. R. Evid. 403.  As the Court's hearing on Plaintiff's Motion for Sanctions demonstrates, the presentation of Defendants' withholding of documents would require a significant amount of testimony and time.  (See Docs. 213–213-5.)  Much of this evidence, such as dates of production, search terms and protocol, and discovery software would be far removed from the substance of Plaintiff's claims.  Consequently, presentation on this issue could cause the trial to become more about discovery than whether Defendants misappropriated Plaintiff's trade secrets.  The confusion caused by and time spent on such a "trial within a trial" would substantially outweigh any benefits this evidence would lend to the jury's fact-finding mission.

Additionally, as one of the cases cited by Plaintiff demonstrates, if the Court were to allow evidence of Defendants' withholding of documents, it would have to allow Defendants an opportunity to explain their conduct.  In Kroger Co. v. Walters, 735 S.E.2d 99, 104 (Ga. Ct. App. 2012), the Georgia appellate court agreed with the trial court's allowance of evidence that the defendant spoliated and altered video evidence.  However, the appellate court then reversed the judgment because the trial court had not allowed the defendant to call a witness to explain its conduct.  In the case at hand, affording Defendants the opportunity to explain their conduct would not only require a significant amount of time, it would also involve troublesome evidence.  For instance, Defendants would likely have to call their former counsel and delve into issues of attorney-client relationships and discovery strategy.  This evidence is not only likely confidential (at the very least) and far afield from Plaintiff's claims, it also involves issues that could confuse and mislead jurors.[9]

---

[9] Further, this presentation could delve into Plaintiff's discovery efforts if Defendants sought to explain away their discovery efforts by comparing them to those of Plaintiff.  In addition, Defendants would

Lastly, there exists a significant probability that the jury would not merely use evidence that Defendants withheld documents during discovery to gauge Defendants' knowledge, intent, or bad faith, but also as an impetus to punish Defendants for conduct during the litigation.  Such punishment for litigation conduct is not within the purview of the jury and would constitute unfair prejudice to Defendants.   Again, Chief Judge Wood has already determined that Defendants will be sanctioned and that those monetary sanctions are sufficient to remedy their misconduct.

Thus, the potential to cause unfair prejudice, confuse the issues, mislead the jury, unduly delay the trial of this case, and waste time substantially outweighs the minimal probative value that evidence of Defendants' withholding of documents would have as to Defendants' state of mind.  For these reasons, Defendant's Motion is **GRANTED** to the extent it seeks to bar Plaintiff from offering Defendants' withholding of documents to prove their state of mind.

       b.  Whether Plaintiff can offer Defendants' withholding of documents during discovery to support its claim for attorneys' fees under O.C.G.A. § 13-6-11.

As a general rule, under Georgia law, a party cannot recover its expenses of litigation.  David G. Brown, P.E., Inc. v. Kent, 561 S.E.2d 89, 90–91 (Ga. 2002).  However, O.C.G.A. § 13-6-11 permits recovery of fees where the jury determines that a defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.  Plaintiff claims that Defendants' discovery misconduct constitutes stubborn litigiousness and that the conduct has caused Plaintiff unnecessary trouble and expense.[10]  However, Georgia courts

---

likely need to introduce mitigating evidence of their new counsel's more commendable discovery efforts so that jurors would not be left with the impression that Defendants never produced the documents. Again, this expansion of the record is far removed from the merits of Plaintiff's claims.

[10]  Plaintiff also argues that Defendants' discovery misconduct is not only substantive proof of stubborn litigiousness and causing Plaintiff unnecessary trouble and expense during this litigation but also

have repeatedly held that, when contemplating an attorneys' fees claims under O.G.G.A. § 13-6-11, the jury should not consider conduct during the litigation itself.  See, e.g., Id. at 90 ("[T]he element of bad faith that will support a claim for expenses of litigation under [O.C.G.A.] § 13-6-11[ ] must relate to the acts in the transaction itself prior to litigation, not to the motive with which a party proceeds in the litigation.")); M & H Const. Co. v. N. Fulton Dev. Corp., 519 S.E.2d 287, 288–89 (Ga. Ct. App. 1999); Stone v. King, 396 S.E.2d 45, 46 (Ga. Ct. App. 1990) ("[Section] 13–6–11, which permits an award of attorney fees 'where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense,' has been held to apply to conduct arising from the transaction underlying the cause of action in litigation."); Padgett v. Moran, 306 S.E.2d 96, 97 (Ga. Ct. App. 1983); Raiford v. Nat'l Hills Exch., LLC, No. CV 111-152, 2013 WL 1286204, at *27 (S.D. Ga. Mar. 27, 2013) *reconsideration denied by* No. CV 111-152, 2014 WL 97359 (S.D. Ga. Jan. 8, 2014) ("An award under Section 13-6-11 must relate to conduct arising from the underlying cause of action being litigated, as opposed to conduct during the course of litigation."); Gayton v. Trux Transp., Inc., No. 1:05-CV-3249-TWT, 2006 WL 3266488, at *4 (N.D. Ga. Nov. 9, 2006) ("However, Georgia's courts have clearly stated that a claim under [Section] 13-6-11 applies to a defendant's conduct before the commencement of litigation, and necessarily does not encompass conduct in the course of litigation.).[11]

At the Motions in Limine hearing, Plaintiff's counsel stated that, while this pre-litigation limitation applies to attorneys' fees claims premised in bad faith, it does not apply to claims

---

circumstantial proof of Defendants' bad faith state of mind prior to the litigation.  For the reasons set forth in subsection IV.B.3(a) above, any probative value that Defendants' withholding documents may have as to Defendants' state of mind is outweighed by other factors.

[11]  "Conversely, [O.C.G.A. §§] 9-15-14(a) [and] (b), which authorize[ ] the recovery of attorney fee expenses incurred in responding to certain claims, defenses, or litigation tactics, ha[ve] been interpreted to govern conduct occurring during the litigation."  Stone, 396 S.E.2d at 46.

premised in unnecessary trouble and expense or stubborn litigiousness.[12]   However, Georgia

courts have repeatedly rejected such a distinction.  For example, in Padgett, the Georgia Court of

Appeals stated, "the only evidence concerning appellant's alleged stubborn litigiousness dealt

with discovery filed in his defense in this action. . . . [T]he Civil Practice Act contains remedies

available to a party litigant when he feels he has been the subject of burdensome discovery. . . .

Allowance of attorney fees pursuant to [Section] 13-6-11 based upon a party's conduct in the

course of litigation is wholly improper."  306 S.E.2d at 97 (citing Raybestos-Manhattan, Inc. v.

Friedman, 275 S.E.2d 817, 821 (Ga. Ct. App. 1981)).  Similarly, the Northern District of Georgia

stated, "any alleged stubbornly litigious conduct occurring over the course of this litigation

cannot justify an award of attorney's fees under [O.C.G.A. § 13-6-11.]"  Gayton, No. 1:05-CV-

3249-TWT, 2006 WL 3266488, at *4.  Rather than being premised in conduct occurring during

the course of litigation, "statutory recovery for stubborn litigiousness or causing unnecessary

trouble and expense is authorized if there exists no bona fide controversy or dispute regarding

---

[12]  Plaintiff cites the case of Kroger 735 S.E.2d at 104, for the proposition that "evidence of events occurring after a cause of action in tort arises may be admissible to demonstrate the defendant caused the plaintiff unnecessary trouble and expense." (Doc. 401, p. 4.)  However, "events occurring after a cause of action in tort arises" do not equate to events that occurred after a lawsuit was filed.  For instance, in Kroger, the primary conduct at issue, spoliation of evidence, occurred after the accident but prior to the filing of the lawsuit, and there was a jury question as to when the other conduct, the manipulation of a surveillance camera, occurred. 735 S.E.2d at 104–05.  This difference is further demonstrated by the case which is often cited for the principle that Plaintiff cites, U-Haul Co. of W. Ga. v. Ford, 320 S.E.2d 868 (Ga. Ct. App. 1990).  In U-Haul, the court affirmed the award of attorneys' fees because of the numerous ways the defendant refused to respond to the plaintiff or pay her claims before she filed suit. 320 S.E.2d at 871–72.  Furthermore, the court in Kroger reaffirmed that the key inquiry in an attorneys' fees claim for stubborn litigiousness or unnecessary trouble and expense is whether "there exists no bona fide controversy or dispute regarding the liability for the underlying cause of action." David G. Brown, P.E., 561 S.E.2d at 91.  A defendant causes unnecessary trouble and expense for the purposes of O.C.G.A. § 13-6-11 by demonstrating a "post-collision-pre-litigation attitude of 'so sue me' without having a valid reason for questioning [plaintiff's] claim," thereby "forcing plaintiff to resort to the courts in order to collect."  Brown v. Baker, 398 S.E.2d 797, 800 (Ga. Ct. App. 1990) (emphasis supplied).  Because Defendants' withholding of discovery documents obviously occurred after Plaintiff resorted to this Court to collect, that conduct cannot be part of their "pre-litigation attitude."  Plaintiff also cites the case of Friday v. United Parcel Serv. of Am., Inc., No. 1:04-CV-1351-TWT, 2006 WL 648758, at *3 (N.D. Ga. Mar. 10, 2006).  (Doc. 401, p. 4.)  However, that case dealt with a request for sanctions under Federal Rule of Civil Procedure 37, not a claim for fees under O.C.G.A. § 13-6-11

liability for the underlying cause of action."  David G. Brown, P.E., 561 S.E.2d at 90–91; see also M & H Const. Co., 519 S.E.2d at 288–89 ("Thus, in a case where bad faith is not an issue, attorney[ ] fees are not authorized under [Section] 13-6-11 if the evidence shows that a genuine dispute exists-whether of law or fact, on liability or amount of damages, or on any comparable issue[.]").

Accordingly, to establish that Defendants were stubbornly litigious or caused Plaintiff unnecessary trouble and expense, Plaintiff must demonstrate that there was no bona fide controversy on its claims rather than relying upon Defendants' discovery abuses and other conduct during the course of this lawsuit.[13]

For these reasons, evidence that Defendants withheld documents is not admissible to prove Plaintiff's claims for attorneys' fees under O.C.G.A. § 13-6-11.

    c.  Whether Plaintiff can offer Defendants' withholding of documents during discovery to support its claims for punitive and exemplary damages.

Plaintiff also argues that it should be allowed to enter evidence of Defendants' withholding of documents to prove its claim of exemplary damages under the GTSA, as well as its claim for punitive damages under O.C.G.A. § 51-12-5.1.  (Doc. 401, p. 5.)  Plaintiff primarily seeks to introduce this evidence to prove Defendants' prelitigation state of mind, which it contends warrants these types of damages.  Id.

The Court rejected offering this evidence for this purpose in subsection (a) above. Furthermore, to the extent Plaintiff argues that Defendants' conduct during this litigation directly

---

[13]  The fact that Defendants' post-litigation misconduct cannot be considered by the jury to support Plaintiff's attorneys' fees claims supports the above analysis that evidence of this misconduct could cause confusion and undue prejudice.  For example, if evidence of the misconduct was introduced for the purpose of showing Defendants' intent as to the misappropriation claim, there is danger that the jury would be confused that it could also use evidence of the discovery misconduct to determine that Defendants were stubbornly litigious or caused Plaintiff unnecessary trouble or expense.  Consequently, the presence of an attorneys' fees claim actually cuts against, rather than supports, the admission of such evidence.

warrants exemplary or punitive damages, Georgia law forecloses that line of reasoning.  Georgia courts have repeatedly held that a party cannot recover punitive damages for conduct during the litigation.  Citizens & S. Nat'l Bank v. Bougas, 265 S.E.2d 562, 563 (Ga. 1980) ("There is no provision for punitive damages arising because of conduct occurring during the litigation. The aggravating circumstance must relate to the tort being sued on, which in this case was wrongful conversion."); Kurtz v. Brown Shoe Co., 637 S.E.2d 111, 112–13 (Ga. Ct. App. 2006) ("First of all, the trial court correctly ruled that there is no statutory or common law basis for [plaintiff] to bring a punitive damages claim based on an alleged discovery dispute wholly unrelated to her injuries."); Holmes v. Drucker, 411 S.E.2d 728, 729–30 (Ga. Ct. App. 1991) ("Georgia law generally excludes, as irrelevant and prejudicial, evidence of defendant's conduct occurring after the act giving rise to plaintiff's claim.")  Consequently, Plaintiff may not introduce Defendants' withholding of documents to prove its claim of exemplary or punitive damages.

**V.    Defendants' Motion in Limine No. 5 to Exclude Evidence, Testimony, and Oral Argument of Damages Calculated on Plaintiff's Mechanized Process and Recipe (Doc. 390)**

Defendants' Motion in Limine No. 5 is **DENIED** for the reasons stated at the Motions in Limine Hearing.

**VI.   Defendants' Motion in Limine No. 6 to Prohibit Plaintiff's Expert J.P. Gingras from Offering Testimony During Phase One of Trial that is in Support of Opinion No. 5 in his Expert Report or any Testimony Describing Defendants' Ability to Pay Money Damages (Doc. 391)**

Defendants' Motion in Limine No. 6 is **GRANTED AS UNOPPOSED,** as stated during the hearing.

**VII.    Plaintiff's Motion in Limine as to Defendants' Claim for Attorneys' Fees Pursuant to O.C.G.A. § 13-6-11 (Doc. 416)**

Plaintiff's Motion as to Defendants' claim for attorneys' fees is **GRANTED AS UNOPPOSED**, as stated during the hearing.

## CONCLUSION

The Court hereby issues the above rulings on the parties' Motions in Limine for the reasons stated above and at the hearing.  (Docs. 386, 387, 388, 389, 390, 391, 416.)  Any party seeking to object to these rulings must file specific objections within **fourteen (14) days** of the date of this Order.

Any objections asserting that the Magistrate Judge failed to address any contention raised in the Motions must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's ruling directly to the United States Court of Appeals

for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED**, this 22nd day of October, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA